**Thomas F. CARNEY, Delbert D. Nicholas, and John D. Wells, Plaintiffs,**

**v.**

**The CITY OF SHAWNEE, Defendant.**

**No. 98–2019–KHV.**

United States District Court, D. Kansas.

Feb. 19, 1999.

Harold S. Youngentob, Goodell, Stratton, Edmonds & Palmer, Topeka, KS, for plaintiffs.

Lori R. Schultz, Julia Riggle McKee, Morrison & Hecker L.L.P., Kansas City, MO, M. Ellis Rainey, II, Shawnee, KS, for defendant.

*MEMORANDUM AND ORDER*

VRATIL, District Judge.

This matter is before the Court on *Defendant's Motion for Summary Judgment* (Doc. # 64) filed September 30, 1998. Having carefully considered the parties' arguments and the applicable law, the Court finds that defendant's motion for summary judgment should be sustained as to plaintiffs' claims of intentional infliction of emotional distress and otherwise denied.

A. *Standards for Summary Judgment*

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56(c); *accord Anderson v. Liberty*

*Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. A "genuine" factual dispute requires more than a mere scintilla of evidence. *Id.* at 252, 106 S.Ct. 2505.

The moving party bears the initial burden of showing that there is an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga,* 942 F.2d 737, 743 (10th Cir.1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Securities, Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on his pleadings but must set forth specific facts. *Applied Genetics,* 912 F.2d at 1241.

"[W]e must view the record in the light most favorable to the parties opposing the motion for summary judgment." *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir.1991). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. *Anderson,* 477 U.S. at 250–51, 106 S.Ct. 2505. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir.1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson* at 251–52, 106 S.Ct. 2505.

B. *Analysis*

At all times material to this suit, plaintiffs were police officers for the City of Shawnee, Kansas. Plaintiffs—Thomas F. Carney, Delbert D. Nicholas and John D. Wells—allege that their supervisor, Lieutenant Walter McDaniel, subjected them to sexual harassment by making unwelcome homosexual advances. Plaintiffs allege both hostile work environment and *quid pro quo* harassment. They seek relief pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* as amended by the Civil Rights Act of 1991; the Civil Rights Act of 1866, 42 U.S.C. § 1983; and the Kansas Act Against Discrimination, K.S.A. § 44–1001 *et seq.* Plaintiffs also allege a supplemental state law claim of intentional infliction of emotional distress. Nicholas also asserts a Title VII claim for retaliation and constructive discharge. By order dated October 9, 1998, the Court ruled that the City of Shawnee was entitled to summary judgment on the Title VII retaliation and failure to promote claim of Carney and Wells, as well as the First Amendment claims of all three plaintiffs under § 1983. *See Carney v. City of Shawnee,* 24 F.Supp.2d 1185, 1190, 1191 (D.Kan.1998).

1. Plaintiffs' Title VII Sexual Harassment claims

The City of Shawnee first contends that it is entitled to summary judgment because the alleged harassment did not affect a term, condition or privilege of plaintiffs' employment. It argues that "no term or condition of employment for any of the three plaintiffs was ever made contingent upon compliance with a perceived sexual request." *Defendant's Memorandum in Support of Summary Judgment* (Doc. # 65) at 31. Plaintiffs respond that implied threats of job insecurity constitute adverse job consequences which can be

sufficient to establish *quid pro quo* harassment. The Court agrees. *See Aldridge v. State of Kansas,* 1997 WL 614323, No. 96–2382–JWL (D.Kan. Sept. 10, 1997) (citing *Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1297 (3rd Cir.1997) ("[t]he threat [itself] is sufficient to constitute discrimination with respect to compensation, terms, conditions, or privileges of employment")).

Plaintiffs have presented evidence that when they did not comply with McDaniel's sexual requests, he threatened them with transfer from the detective unit to the patrol unit on account of their failure to satisfy his sexual requests. Plaintiffs have presented evidence that a transfer to the patrol unit constituted reassignment with significantly different responsibilities and benefits, and that this type of transfer had been used as a form of discipline in the past. Although the City denies that McDaniel had the ability to carry out his threats, the Court finds that plaintiffs have submitted sufficient evidence to create a question of fact on this issue. In additional, Carney and Wells have presented evidence that the department denied them training and equipment, and that such denial was related to unsatisfied requests for sexual favors by McDaniel. The Court concludes that plaintiffs have presented sufficient evidence from which a reasonable jury could find that the alleged harassment did affect a term, condition, or privilege of plaintiffs' employment, thus precluding summary judgment on this issue.[1]

■ The City next argues that summary judgment is warranted because McDaniel's alleged conduct was not discriminatory or based on sex. The City cites *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998), for the proposition that a plaintiff "must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted discrimina[tion] ... because of sex," *id.* at 1002, and contends that the alleged conduct of McDaniel was "merely tinged with offensive sexual connotations." *Defendant's Memorandum in Support of Summary Judgment* (Doc. # 65) at 33. The Court disagrees.

The Supreme Court in *Oncale* stated:

"The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Harris, supra,* at 25, 114 S.Ct., at 372 (GINSBURG, J., concurring).

Courts and juries have found the inference of discrimination easy to draw in most male-female sexual harassment situations, because the challenged conduct typically involves explicit or implicit proposals of sexual activity; it is reasonable to assume those proposals would not have been made to someone of the same sex. The same chain of inference would be available to a plaintiff alleging same-sex harassment, if there were credible evidence that the harasser was homosexual. But harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex. A trier of fact might reasonably find such discrimination, for example, if a female victim is harassed in such sex-specific and derogatory terms by another woman as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace. A same-sex harassment plaintiff may also, of course, offer direct

1. In *Jeffries v. Kansas,* 147 F.3d 1220, 1231–32 (10th Cir.1998), the Tenth Circuit recently stated, "In recognition of the remedial nature of Title VII, the law in this circuit liberally defines adverse employment action." Rather than defining a set rule regarding what constitutes an "adverse employment action," it noted that "this court takes a case-by-case approach to determining whether a given employment action is 'adverse.' " *Id.* (citing *Corneveaux v. Cuna Mut. Ins. Group,* 76 F.3d 1498, 1507 (10th Cir.1996), and *Berry v. Stevinson Chevrolet,* 74 F.3d 980, 986–87 (10th Cir.1996)).

comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace. Whatever evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted "discrimina[tion] ... because of ... sex."

118 S.Ct. at 1002. The Court finds that *Oncale,* when read in its full context, militates against entry of summary judgment on this issue in this case. Plaintiffs have presented evidence that McDaniel limited his insults, unwanted sexual touching, and threats to males. Indeed, by McDaniel's own admission, his conduct was directed only at males.

The City next contends that plaintiffs have not produced sufficient evidence of a hostile work environment to withstand summary judgment. Hostile environment harassment occurs where the conduct of a supervisor or co-worker unreasonably interferes with an individual's work performance or creates an intimidating, hostile, or offensive work environment. *See Wright–Simmons v. City of Oklahoma City,* 155 F.3d 1264, 1269 (10th Cir.1998) (citing *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). To establish this claim, plaintiffs must show both that the conduct to which they were subject was "severe or pervasive enough to create ... an environment that a reasonable person would find hostile or abusive," and that they "subjectively perceive[d] the environment to be abusive." *Id.* (citing *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).

Whether a work environment is hostile must be evaluated based on all the circumstances, which may include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (citing *Harris* at 23, 114 S.Ct. 367). Looking at all the circumstances and viewing the evidence in the light most favorable to the plaintiffs, the Court concludes that plaintiffs have produced sufficient evidence to allow a reasonable jury to find that McDaniel's conduct amounted to hostile environment sexual harassment. Plaintiffs have presented the following evidence that McDaniel subjected them to hostile environment sexual harassment: (1) Captain Clark reported to Chief Hayselden on May 13, 1996 that "[i]t is my opinion that the actions of Lieutenant McDaniel constitute sexual harassment as defined in the City of Shawnee Personnel Manual, Section 2.46 and 13.3," and that "[t]he incident of McDaniel grabbing Wells' head and hunching [masturbating on] his neck constitutes battery"; (2) on more than one occasion, McDaniel made comments which requested oral sex from plaintiffs;[2] (3) Nicholas claims that for years he has witnessed McDaniel's sexual misconduct, including McDaniel seeking oral sex, asking male officers to hold his genitalia, and—in one instance, touching Nicholas' leg and requesting a "blow job." Thus, summary judgment on this issue is denied.

The City next asserts that plaintiffs have failed to present sufficient evidence that the City was negligent or reckless in failing to remedy or prevent a hostile work environment. In the *Pretrial Order* (Doc. # 96) filed February 2, 1999, plaintiffs allege both an employer negligence theory and vicarious employer liability as grounds for municipal liability. Under a negligence theory, "an employer may be held liable if it knew, or should have known, about the hostile work environment and failed to respond in an appropriate manner." *See Wright–Simmons,* 155 F.3d at 1270.[3]

2. According to Clark's report, plaintiffs complained that McDaniel would grab his penis and ask the plaintiffs to eat the "Big Mac," and on occasions, would unzip his pants.

3. The Supreme Court recognized in *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742,

The evidence shows that in March of 1996, before he lodged a written report in May of that year, Detective Perry verbally apprised Captain Clark about McDaniel's behavior. Captain Clark simply laughed and stated, "That's just Mac." Chief Hayselden agreed that the information which Perry provided to Clark about McDaniel's conduct was sufficient to initiate an investigation. In response to Perry's complaint, however, Clark did not immediately conduct an investigation. Plaintiffs have also presented evidence that after Clark did conduct an investigation—and after he found that McDaniel had engaged in sexual harassment and battery—the City allowed McDaniel's harassment and intimidation to continue in a number of ways. Specifically, among other things, the City allowed McDaniel to rate Wells and Carney in the 1996 promotion process and to be involved in plaintiffs' training and supervision. Moreover, the evidence suggests that even absent any complaint to supervisors, the hostile environment may have been sufficiently pervasive that the City should have known about it before Clark's formal investigation in May 1996. Accordingly, a reasonable jury could find that the City's response was neither timely nor reasonable because it knew or should have known of the hostile work environment before May 1996. Thus, the evidence, viewed in the light most favorable to the plaintiffs, could support a finding that the City is liable on a negligence theory of employer liability and summary judgment on this issue must be denied.

As to plaintiffs' claim of vicarious employer liability, the City next argues that it is entitled to summary judgment because it has met the elements of an affirmative defense to vicarious liability as articulated in *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), and *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). In *Faragher,* the Supreme Court held as follows:

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, *see* Fed. Rule.Civ.Proc. 8(c). The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. While proof that an employer had promulgated an antiharassment policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense. And while proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing an unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the em-

118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) and *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) the continuing validity of negligence as a separate basis for employer liability. "[A]n employer can be liable ... where its own negligence is a cause of the harassment. An employer is negligent with respect to sexual harassment if it knew or should have known about the conduct and failed to stop it." *Burlington,* 118 S.Ct. at 2267; *see also Faragher,* 118 S.Ct. at 2294 (recognizing negligence as alternative to theory of vicarious liability); *Wilson v. Tulsa Junior College,* 164 F.3d 534, 541 n. 4 (10th Cir.1998) (recognizing alternative negligence theory of liability after *Burlington* and *Faragher*).

ployer's burden under the second element of the defense. No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment. *See Burlington,* ante, — U.S., at ——, 118 S.Ct., at 2269.

118 S.Ct. at 2292–93.

The Court finds that questions of fact remain for trial regarding the elements of the affirmative defense. The Court has previously noted that plaintiffs have produced evidence which is sufficient to create a genuine issue of fact as to whether the City exercised reasonable care to promptly correct McDaniel's sexually harassing behavior. Plaintiffs have also presented evidence from which a reasonable jury could find that at the time of the incidents at issue, the City had not adopted an appropriate anti-harassment policy and complaint reporting procedure. For example, plaintiffs have submitted evidence that before 1998, when plaintiffs filed this suit, the City did not have in place a policy which specifically allowed complaints to be reported outside the chain of command until 1998.

Moreover, under *Faragher* and *Burlington,* no affirmative defense is available where the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment. *Faragher,* 118 S.Ct. at 2293; *Burlington* 118 S.Ct. at 2269. The Court finds that plaintiffs have presented sufficient evidence to create a question of fact whether McDaniel's harassment resulted in a tangible employment action. Accordingly, the City is not entitled to summary judgment as to its claimed affirmative defense.

Because the standards governing sexual harassment claims under the KAAD are identical to those under Title VII, *see Sprague v. Thorn Americas, Inc.,* 129 F.3d 1355, 1368 n. 6 (10th Cir.1997), the Court must deny summary judgment as to plaintiffs' claims under the KAAD as well.

2. Plaintiffs' Section 1983 Claims

Sexual harassment can violate the Fourteenth Amendment right to equal protection of the laws, thus triggering a section 1983 cause of action. *Starrett v. Wadley,* 876 F.2d 808, 814 (10th Cir.1989). Municipalities, such as the City of Shawnee, are considered "persons" to whom section 1983 liability applies. *Monell v. New York City Dept. of Social Serv.,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In *Butcher v. City of McAlester,* 956 F.2d 973 (10th Cir.1992), the Tenth Circuit summarized a municipality's liability under § 1983 as follows:

> [A] municipality is liable for the acts of its "final policy making authority" and may also be liable for the actions of an employee who is not a final policy making authority if a widespread practice exists to the end that there is a "custom or usage with the force of law," or a final policy maker ratifies a subordinate's recommendation, and the basis for it, thus rendering a final decision chargeable to the municipality.

956 F.2d at 977 n. 2 (citations omitted). In order to establish a custom, the actions must be "persistent and widespread ... practices of [city] officials." *Starrett,* 876 F.2d at 818.

The City asserts that summary judgment is warranted on plaintiffs' § 1983 claims. It argues that plaintiffs cannot prove that McDaniel's harassment practices were "so permanent and well settled as to constitute a custom or usage with the force of law," because plaintiffs have not presented evidence establishing "persistent and widespread ... practices of [city] officials." Plaintiffs contend that the evidence shows the City's failure to prevent and remedy harassment from which a reasonable person could infer "a widespread practice [of harassment] that is 'so permanent and well settled as to constitute a "custom or usage" with the force of law.'" *Plaintiffs' Brief in Opposition to Defendant's Motion for Summary Judgment*

(Doc. # 77) at 6 (citing *Cannon v. City and County of Denver,* 998 F.2d 867, 877 (10th Cir.1993)). Plaintiffs seek to impose liability on the City based on a municipal custom of inadequate training of police officers in the area of sexual harassment.

In *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412, (1989), the Supreme Court articulated the following rule:

> We hold today that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom police come into contact.... Only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983.

489 U.S. at 388–89, 109 S.Ct. 1197.

Plaintiffs submit that the following evidence reflects the City's deliberate indifference to sexual harassment policies with the Shawnee Police Department: First, police department staff and supervisors did not receive timely and adequate sexual harassment training because, by Chief Hayselden's own admission, he was lax about such training until plaintiffs filed EEOC charges. Chief Hayselden, pursuant to City policy, was responsible for training police officers regarding the City's sexual harassment policy. Chief Hayselden, along with other supervisors and staff, did not understand that the City's sexual harassment reporting and investigation policy were tied to a command structure that "put the plaintiffs in jeopardy." Second, the EEOC's Guidelines, as incorporated by the City's Affirmative Action Plan, recognized the City's affirmative duty to take reasonable steps to prevent harassment. McDaniel, however, testified that he received no training until after the complaints at issue here. Third, the City failed to tailor a sexual harassment policy specifically for the police department, as it had done for the fire department. Finally, the City did not regularly communicate its sexual harassment policy to police department employees—the policy was not posted and was not discussed in any police officer training sessions. See *Plaintiff's Brief in Opposition* at 37–38.

The Court finds that such evidence gives rise to a disputed issue of material fact concerning whether the City properly trained its police officers. Accordingly, summary judgment on this issue must be denied.[4]

### 3. Nicholas' Claims for Retaliation and Constructive Discharge

To make out a constructive discharge claim under Title VII, plaintiff must allege facts sufficient to demonstrate under an objective test that a reasonable person would have viewed the working conditions as intolerable. *Jeffries v. State of Kansas,* 147 F.3d 1220, 1233 (10th Cir. 1998). If an employee resigns of his own free will, even as a result of the employer's actions, that employee will not be held to have been constructively discharged. *Id.* "Essentially, a plaintiff must show that [ ]he had 'no other choice but to quit.'" *Id.* (quoting *Yearous v. Niobrara County Mem'l Hosp.,* 128 F.3d 1351, 1356 (10th Cir.1997) (quoting *Woodward v. City of Worland,* 977 F.2d 1392, 1402 (10th Cir. 1992)). The Tenth Circuit has found constructive discharge based on retributive acts that follow a complaint of sex discrim-

4. Moreover, trial courts should act with caution in granting summary judgment, and may deny summary judgment where there is reason to believe that the better course would be to proceed to trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 255, 106 S.Ct. 2505. *See also Jones v. Nelson,* 484 F.2d 1165, 1168 (10th Cir.1973) (summary judgment is a drastic remedy which should be approached cautiously). Out of an abundance of caution, the Court denies summary judgment on plaintiffs' § 1983 claim, in the belief that the Court will be in a much better position to make a definitive ruling after hearing the evidence at trial.

ination. *Id.* (citing *Woodward,* 977 F.2d at 1402).

Nicholas has presented evidence that when he pursued a Title VII action regarding McDaniel's sexual harassment, the Chief of Police stated that Nicholas' career, as well as the career of Carney and Wells, was "dead in the water." Subsequently, Chief Hayselden issued a memo which transferred Nicholas back to the patrol unit. Lt. Clayton then informed Nicholas that Nicholas could keep himself from being transferred out of the detective unit to patrol by turning in his retirement papers. Nicholas maintains that such retaliation was severe, because he and all other police officers knew that a transfer to the patrol unit was considered punishment. Based upon the foregoing evidence, the Court finds that Nicholas has raised triable issues of fact on his constructive discharge claim. *See Woodward,* 977 F.2d at 1402 (finding fact question as to constructive discharge where plaintiffs testified to retributive conduct including exclusion from office conversations, exclusion from meetings, and being laughed at by co-workers; doubts as to severity of retributive acts and availability of other avenues to correct the conduct other than resignation should be resolved by factfinder). The City's motion for summary judgment on this issue is denied.

4. Plaintiffs' Claims of Intentional Infliction of Emotional Distress

Next, the City maintains that it is entitled to summary judgment with respect to plaintiffs' state tort claim of intentional infliction of emotional distress, because plaintiffs failed to provide written notice of tort claims as required by K.S.A. § 12–105b(d). K.S.A. § 12–105b(d) provides, in relevant part:

> Any person having a claim against a municipality which could give rise to an action brought under the Kansas tort claims act shall file a written notice as provided in this subsection before commencing such action. The notice shall be filed with the clerk or governing body of the municipality and shall contain the following: (1) The name and address of the claimant and the name and address of the claimant's attorney, if any; (2) a concise statement of the factual basis of the claim, including the date, time, place and circumstances of the act, omission or event complained of; (3) the name and address of any public officer or employee involved, if known; (4) a concise statement of the nature and the extent of the injury claimed to have been suffered; and (5) a statement of the amount of monetary damages that is being requested.

The purpose of the notice requirement is to sufficiently advise the municipality of the time and place of the injury and give the city an opportunity to ascertain the character and extent of the injury sustained. *Bradford v. Mahan,* 219 Kan. 450, 457, 548 P.2d 1223, 1230 (1976); *Tucking v. Board of Comm'rs of Jefferson County,* 14 Kan.App.2d 442, 448, 796 P.2d 1055, 1059 (1990) (quoting *Holmes v. Kansas City,* 101 Kan. 785, 786, 168 P. 1110 (1917)). "The notice requirements in K.S.A. § 12–105b(d) are mandatory and a condition precedent to bringing a tort claim against a municipality." *Miller v. Brungardt,* 916 F.Supp. 1096, 1098 (D.Kan. 1996).

Plaintiffs assert that they have complied with the notice provision, and attach as exhibits two letters which they contend satisfy the requirements of K.S.A. § 12–105b(d). One letter, exhibit 61, is addressed to Thomas Hayselden, Chief of Police; the other letter, exhibit 64, is addressed to Ellis Rainey, attorney for the City of Shawnee. Plaintiffs contend that because a copy of the first letter was sent to the city manager, and a copy of the second letter was sent to the city manager and city clerk, the letters constitute sufficient notice as required by K.S.A. § 12–105b(d).

Substantial compliance is required under K.S.A. § 12–105b(d). *See* K.S.A § 12–105b(d) (in filing of notice of claim, substantial compliance with § 12–105b(d) constitutes valid filing of claim). Substantial compliance only occurs, however, if plaintiff makes an attempt to state each element of the notice. *Tucking,* 14 Kan. App.2d at 446–47, 796 P.2d at 1058. In order to substantially comply with K.S.A. § 12–105b(d), "a plaintiff must attempt to supply the information required by each of the five elements of the statute if relevant to the facts of the case; omission of one or more relevant elements makes the notice fatally insufficient." *Tucking,* 14 Kan. App.2d at 442, syl. ¶ 3, 796 P.2d at 1056; *see also Wiggins v. Housing Auth. of Kansas City, Kan.,* 19 Kan.App.2d 610, 613, 873 P.2d 1377, 1380 (1994) (citing *Tucking*). Therefore, "there is no substantial compliance if one element is completely missing." *Tucking,* 14 Kan.App.2d at 446–47, 796 P.2d at 1057.

Here, the Court assumes without deciding that plaintiffs satisfied the requirement that notice be filed "with the clerk or governing body" by sending copies to the city manager and city clerk of letters addressed to the chief of police and city attorney. The Court nonetheless finds that plaintiffs' asserted notice does not substantially comply with § 12–105b because two of the five required statutory elements are completely missing and two elements are only partially met. Specifically, the letters failed to provide plaintiffs' addresses as required in element one. They failed to provide the addresses of the public officers and employees involved, as required by element three. They failed to provide "a concise statement of the nature and the extent of the injury claimed to have been suffered," as required in element four. And they made no reference to the amount of monetary damages claimed, as required in element five. Indeed, plaintiffs admit that "the 'precise notice' language is not provided." *Plaintiffs' Brief in Opposition to Defendant's Motion for Summary Judgment* at 44. The Court concludes that plaintiff. letters are not in substantial compliance with K.S.A. § 12–105b(d), and that they therefore do not constitute the requisite written notice under the statute. Accordingly, the City is entitled to summary judgment as to plaintiffs' state law tort claim of intentional infliction of emotional distress.

**IT IS THEREFORE ORDERED** that the *Defendant's Motion for Summary Judgment* (Doc. # 64) filed September 30, 1998, be and hereby is sustained as to plaintiffs' claims of intentional infliction of emotional distress. In all other respects, defendant's motion for summary judgment is denied.